[Sac. No. 1622.—Department Two.—October 20, 1908.]

# TULARE IRRIGATION DISTRICT et. al., Appellants, v. W. W. COLLINS, Sheriff of Tulare County, Respondent.

IRRIGATION DISTRICT—UNUSED LANDS OF HELD IN TRUST.—An irrigation district, organized under the act of March 7, 1887, generally known as the Wright Act, and the Bridgeford Act amendatory thereof, (Stats. 1897, p. 263), is a public corporation, and the legal title to all lands of the district, including lands which, because of a change in its plans, have become unnecessary to its irrigation scheme, is held in trust by the district, and such lands are dedicated and set apart to the uses and purposes specified in the act. The beneficial title is in the owners of the land within the irrigation district.

ID.—UNUSED LANDS EXEMPT FROM EXECUTION.—Under such acts, the trustees of the district have no power to sell the lands which have become unnecessary to and are not used in its irrigation scheme, and such lands cannot be sold on execution at the instance of a judgment creditor of the district.

ID.—ESTOPPEL OF DISTRICT.—The irrigation district is not estopped from enjoining the attempted sale of such lands on execution by any remissness of duty on the part of the trustees in failing to pay the judgment under which the execution was issued.

Appeal from a judgment of the Superior Court of Tulare County and from an order refusing a new trial. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

C. L. Russell, for Appellants.

Hannah & Miller, for Respondent.

HENSHAW, J.—The plaintiff, Tulare Irrigation District, is a public corporation organized under the act of the legislature, approved March 7, 1887, generally known as the Wright Act [Stats. 1887, p. 29]. The other parties plaintiff are members of the board of directors of the irrigation district and owners of land within its territorial limits. In 1894 one Mosier recovered a judgment against the district for damages suffered by him through the negligence of the district in flooding his land. The judgment was never satisfied, but was

kept in force by subsequent actions thereon. In 1896 he caused execution to issue on his judgment, directing the sheriff to levy upon the personal property of the district, and, failing to find sufficient thereof, then to levy upon the real property of the district. This execution was placed in the hands of the defendant Collins for service, and he levied upon certain lands owned by the district and gave notice of sale. This action was thereupon brought to restrain him from making such sale. The court found the facts as above recited, and additionally found that the lands sought to be sold, though owned by the district, were not within the plan adopted by the district as its system and scheme of irrigation; that they were not a part of the canal system, of the storage reservoir system or of any other work or works for the irrigation of the land, for the completion and operation of which system bonds had been sold; that after the receipt of moneys from the sale of bonds, the district did modify its plan and devoted part of the moneys so received to the acquisition of the land in controversy, contemplating its use as a reservoir, but that the district failed to acquire other lands necessary for the perfection of this reservoir site, and finally abandoned this branch of its scheme and acquired other lands, waters and water-rights. It finds the lands to be wholly unnecessary to and without the irrigation plans of the district, and to be in their character agricultural and grazing lands; finds that the bonds of the district have been fully paid, that the district has no indebtedness other than this judgment, which it has never paid or offered to pay. Upon these findings it refused to restrain the defendant from proceeding with the sale.

That upon such findings it was the duty of the district to pay this judgment may not be questioned. As little may it be questioned that the judgment creditor should have the right, by appropriate method, to compel the payment of his judgment. But here we are confronted with the single proposition whether or not an execution, levy and sale of certain of the lands of the district is a lawful method to accomplish this end.

All of the land owned by this corporation was acquired by virtue of the provisions of section 13 of the Wright Act, which declares that, "the legal title to all property acquired under the provisions of this act shall immediately and by operation

of law vest in such irrigation district, and shall be held by such district in trust for and is hereby dedicated and set apart to the uses and purposes set forth in this act, and said board is hereby authorized and empowered to hold, use, acquire, manage, occupy and possess said property as herein provided."

An examination of the Wright Act and of the Bridgeford Act amendatory thereof (Stats. 1897, p. 263), discloses that the situation here presented was not contemplated by the legislature, or if contemplated was not provided for. We mean by this situation, that disclosed by the findings where an irrigation district owns lands, which lands, because of a change in its plans, have become unnecessary to the irrigation scheme. It is to be noted that the legal title to all of the lands of the district is held in trust by the district and "is dedicated and set apart to the uses and purposes" specified in the act. The beneficial title is in the owners of the land within the irrigation district. (*Merchants' Bank* v. *Escondido Irr. Dist.*, 144 Cal. 329, [77 Pac. 937].) The trust being expressly limited in its terms, dedicating and devoting all lands owned by the district to the purposes of irrigation, there is no power in the trustees as the law now stands, even to sell such lands. (*San Francisco* v. *Itsell*, 80 Cal. 57, [22 Pac. 74].) Such an attempted alienation would be in clear violation of the trust. In brief, it seems not to have occurred to the legislative mind that after adopting such a plan of irrigation as the act requires and selling bonds in accordance with that plan and then using the money arising from the bond sale for the purchase of lands, the district might thereafter so change its plans as to render some of the land unnecessary for its purposes. If this contingency had occurred to the legislature, it is reasonable to suppose that it would have made some provision to meet it; would have provided for sale; would have authorized execution and levy, or by some appropriate expression have relieved such land from the terms of the strict trust which it has imposed. But in the absence of such expression these lands stand in precisely the same position as do the other lands of the district. Equally with such other lands they are impressed with the trust and equally they are exempt from execution, levy, and sale. This question as to pueblo lands was most learnedly considered in the leading case of *Hart* v. *Burnett*, 15 Cal. 530, and the prin-

ciples there announced have never been departed from. These principles are equally applicable to the lands held under this public trust. (*Seale* v. *Doane,* 17 Cal. 484; *Fulton* v. *Hanlow,* 20 Cal. 480; *Carlton* v. *Townsend,* 28 Cal. 219; *San Francisco* v. *Cannavan,* 42 Cal. 541; *Ames* v. *City of San Diego,* 101 Cal. 390, [35 Pac. 1005]; *San Francisco* v. *Leroy,* 138 U. S. 656, [11 Sup. Ct. 364].)

We are, in this, not unmindful of the principle relied upon by respondent that the rule exempting from execution the property of a *quasi* public corporation, such as a railroad, goes no further than to relieve from process such property as is necessary to the exercise of the *quasi* public functions which the corporation has assumed, so that a canal basin has been held not to be a legitimate incident to a railroad which has no authorized canal connection, and is not protected from levy and sale; and where such a corporation abandons a portion of its franchise, the property employed in the exercise of this franchise may become subject to execution. (6 Thompson on Corporations, sec. 1755.) In this state, indeed, the principle has been applied to assessments for benefits upon lands owned by public corporations not necessary to the exercise of their functions. (*Ames* v. *City of San Diego,* 101 Cal. 390, [35 Pac. 1005]; *San Diego* v. *Linda Vista Irr. Dist.,* 108 Cal. 189, [41 Pac. 291]; *Miller* v. *Missions School District,* 121 Cal. 350, [66 Am. St. Rep. 33, 53 Pac. 905]; *City Street Improvement Co.* v. *Regents University of California,* 153 Cal. 776 [96 Pac. 801].) But the principle is not applicable to lands held by a public corporation, as here, under an express trust where neither a sale of the land by the district, nor any execution sale could be made without doing direct violation to the terms of the trust. In this respect the situation is identical with that of the pueblo lands considered in the cases above cited.

Nor can force be given to the objection made by respondent that appellants may not be heard in this action, since by their admitted failure to pay the judgment in favor of Mosier they do not come into a court of equity having done or offered to do equity. This just maxim can have no application to a case like this. However remiss the directors may have been in failing to pay the judgment, it cannot be held to estop a public corporation from insisting that its property held under

a public trust shall be protected from illegal seizure and sale, to the end that this public trust may not be violated.

The judgment and order appealed from are therefore reversed.

Lorigan, J., and Melvin, J., concurred.

Hearing in Bank denied.