[Civ. No. 2522.    Third Appellate District.—December 26, 1922.]

## J. F. WHITEMAN, Appellant, v. ANDERSON–COTTON-WOOD IRRIGATION DISTRICT et al., Respondents.

[1] IRRIGATION DISTRICTS—PUBLIC AGENCY—LIABILITY FOR NEGLIGENCE OF OFFICERS.—An irrigation district organized under the Wright Act or California Irrigation District Act must be deemed a public agency created for a public purpose, and such agency is not subject to an action for damages resulting from the negligence of its officers or agents in the absence of a statute expressly imposing such liability.

[2] ID.—ABSENCE OF STATUTORY LIABILITY.—No such liability is expressly imposed in or by the law providing for the organization and government of such districts or by any other statute of this state.

[3] ID.—ACTION FOR DEATH—OBSTRUCTION OF HIGHWAY—PLEADING—NEGLIGENCE—LIABILITY OF DIRECTORS OF IRRIGATION DISTRICT.—A complaint in an action against an irrigation district and its directors for damages for the death of a minor, alleging that the defendants by their agents and servants negligently permitted certain sacks of cement and material for construction work to remain upon a public highway and that the automobile in which the deceased was traveling was driven against said material and overturned, fails to state a cause of action against the individual directors, for the reason that they did not participate in nor encourage the act of negligence that resulted in the injury nor have any knowledge thereof, it appearing that whatever negligence existed was the result of the acts of subagents or employees of the district without any negligence on the part of the trustees in their selection.

APPEAL from a judgment of the Superior Court of Shasta County.    C. J. Luttrell, Judge.    Affirmed.

The facts are stated in the opinion of the court.

W. P. Johnson and James T. Matlock for Appellant.

Carr & Kennedy for Respondents.

BURNETT, J.—The action was for damages for the death of a minor son of plaintiff, alleged to have been caused by

the negligence of defendants. The portions of the amended complaint necessary to an understanding of the contentions of the parties are as follows:

"That on the 1st day of March, 1918, about the hour of 7 o'clock P. M., the said Roy W. Whiteman was being driven with due and proper care in a 'Ford Automobile' by one Jesse Selvester in a Southerly direction, along and over that certain public road and highway, in the County of Shasta, State of California, known as the Anderson-Redding Road and Highway . . .

"That the defendants and each of them on the said 1st day of March, 1918, by their agents and servants, wrongfully, carelessly and negligently left and voluntarily permitted to remain in and upon said road and highway, in said Supervisor District No. 1, certain sacks of cement and material for construction work, thereby obstructing said highway, by leaving said sacks of cement in and upon said road and highway and negligently suffered said sacks of cement and material to remain thereon and thereover obstructing said highway and road, during the night time of said day; and to remain thereon and thereover, without any protection, or fence or light, or signal, or anything else to indicate danger, or give notice to travelers, along and over said road and highway, against accident; that by reason of said negligence, carelessness and improper conduct of the defendants, and each of them, by their said agents and servants, in the night time of said day, while the said Roy W. Whiteman, was lawfully traveling on, and being driven over said road and highway . . . the said Jesse Selvester, and the said Roy W. Whiteman, and each of them being then and there wholly unaware of danger, was without fault or negligence on their part, driven against the said pile of cement and material, and thereby overturned said automobile and the same falling on the said Roy W. Whiteman, pinning him to the ground, and that said automobile caught on fire, by reason of being so overturned, and was totally destroyed by said fire, and that the said Roy W. Whiteman, died while being burned in said fire, from said automobile."

The defendants, Anderson-Cottonwood Irrigation District, and W. F. Smith, A. J. Shields, G. H. Nutting, W. H. Brown, and Charles Hampton, the directors thereof, demurred to said amended complaint upon the grounds that it

does not state facts sufficient to constitute a cause of action against said defendants, or either of them; that said district was improperly joined as a party; that it "is uncertain in that it does not appear therein and cannot be ascertained therefrom wherein these defendants or any of them were careless or negligent in the premises," and, also, how the machine "was overturned, or caught on fire, or was destroyed by fire as the result of any negligence, or carelessness, or improper conduct of these defendants or any of them; or that the death of Roy W. Whiteman was the result of any negligence or carelessness or improper conduct of these defendants, or any of them."

The demurrer was sustained in the following order:

"It is therefore hereby ordered that the demurrer of said defendants to said amended complaint be and the same is hereby sustained and said plaintiff is given ten days to serve and file a second amended complaint in said action."

The plaintiff declined to amend and judgment was thereupon entered for said defendants, from which the appeal has been taken.

The position of the respondent irrigation district in support of the general demurrer "is that being a public corporation an action does not lie against it, in the absence of a statute expressly imposing liability, for a private injury resulting from negligence on the part of its agents or servants," and as to the directors "that they are not liable in an action of tort to a stranger for the negligence of their 'agents and servants,' unless they failed to use ordinary care in selecting such agents and servants, which is nowhere alleged in the complaint."

On the other hand, appellant claims "that an irrigation district, while in a sense a public corporation, is engaged in work not governmental in character, but for the private advantage and benefit of the land owner in the district. The work that it is engaged in, the irrigation of lands in the district, is similar in kind to the work of municipal corporations when supplying their inhabitants with water, gas or electric light. When acting in that capacity it is the rule in California that they are liable for negligence of their agents and servants and it may be remarked that irrigation districts as well as municipal corporations can only act through their agents and servants. (*Chafor* v. *City of Long*

*Beach,* 174 Cal. 478 [Ann. Cas. 1918D, 106, L. R. A. 1917E, 685, 163 Pac. 670] ; *Kellar* v. *City of Los Angeles,* 179 Cal. 605 [178 Pac. 505].) "

The parties seem to be in accord as to the principle of law that governs any possible theory of the case, but they are in disagreement as to the character of an irrigation district and whether its functions be of a public or private character.

It is not disputed that the rule as to "public quasi corporations," such as townships, school districts, road districts, and the like, is that they are not liable for the negligence of their officers, unless such liability is created by statute. (Dillon on Municipal Corporations, 5th ed., sec. 1640; Abbott on Municipal Corporations, sec. 955.)

It is understood, also, that a municipal corporation proper as a government agent in performing its public or political duties is subject to this same rule, but in the performance of certain obligations and duties which are of a private, local or proprietary character, the said rule of liability does not apply, but they are held to the same measure of responsibility as a private corporation. This is made clear by the supreme court in the Chafor and Kellar cases, *supra.* Another principle, also, which qualifies the rule as to public corporations discharging public functions, must be borne in mind to avoid confusion. This is stated in *Perkins* v. *Blauth,* 163 Cal. 782 [127 Pac. 50], as follows: "Wherever the injury complained of is the taking or damaging of private property for public use without compensation then under the guarantee of the federal constitution against such invasion of the private rights of property, neither the state itself nor any of its agencies or mandatories may claim exemption from liability."

Manifestly, that principle can have no possible application to the case at bar, but it was of decisive moment in some of the cases cited herein.

As to the character of irrigation districts as organized under our statute, it must be conceded that they are public corporations or public agencies, but not "municipal corporations" as that term is usually understood. In the illuminating discussion of the subject found in the pioneer case of *In re Madera Irr. Dist.,* 92 Cal. 296 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272], they are treated as "public corporations for governmental purposes" and the act pro-

viding for their creation is declared to be for the benefit of the public, and the means by which such benefit is to be attained are held to be of a public character, and it was upon that ground and for that reason that the legislation was upheld. Therein it is said: ''Here are found the essential elements of a public corporation, none of which pertain to a private corporation. The property held by the corporation is in trust for the public and subject to the control of the state. Its officers are public officers, chosen by the electors of the district, and invested with public duties. Its object is for the good of the public and to promote the prosperity and welfare of the public. 'Where a corporation is composed exclusively of officers of the government, having no personal interest in it, or with its concerns, and only acting as organs of the state in effecting a great public improvement it is a public corporation.' (Angell and Ames on Corporations, sec. 32.)''

In *Jenison* v. *Redfield,* 149 Cal. 500 [87 Pac. 62], it is declared that such district when formed is a public corporation for the sole purpose of obtaining and distributing such water as may be necessary for the lands embraced in the district, ''thus enabling each one to have for his land in the district, the benefit of a common system of irrigation, and bringing about the reclamation of the land of the district from aridity to a condition of suitability for cultivation.'' It was furthermore stated therein that such work under such system is for the public benefit and general welfare and that it might never be accomplished if left to individual enterprise; and that such legislation is sustained on the same ground as the levee and reclamation district legislation, that is, ''that the *land* included within the limits of such a district requires by reason of its situation and condition, the protection or reclamation thus made possible, and that it is for the public welfare that such protection or reclamation should be afforded such land.'' The court proceeds to point out that the district holds all the property acquired by it for one ultimate purpose, which is for the irrigation of the lands within the district and that it cannot appropriate water to any other purpose.

In *Lindsay-Strathmore Irr. Dist.* v. *Superior Court,* 182 Cal. 315 [187 Pac. 1056], referring to these districts, the court said: ''They are public agencies of the same character

as those particularly named (in subd. 5, sec. 170, Code Civ. Proc.), and they are organized for the same general purposes to accomplish similar objects. There is no essential difference in these respects between an irrigation district and a reclamation district or a swamp land or drainage district. The latter are organized to reclaim land by draining off the surplus water. Irrigation districts are organized to reclaim land by supplying water thereto."

In *Turlock Irr. Dist.* v. *White,* 186 Cal. 183 [17 A. L. R. 72, 198 Pac. 1060], the court declares: "The nature of an irrigation district has been a matter of judicial investigation and interpretation and it has been held that such a corporation is not a 'municipal corporation,' but a 'public corporation for municipal purposes.' (*Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112 [41 L. Ed. 369, 17 Sup. Ct. Rep. 56, see, also, Rose's U. S. Notes].)" And the court quotes with approval *People* v. *Reclamation Dist. No. 551,* 117 Cal. 114 [48 Pac. 1016], wherein it was said that these corporations are "state organizations for state purposes."

In *Tormey et al.* v. *Anderson-Cottonwood Irr. Dist.,* 53 Cal. App. 559 [200 Pac. 814], the supreme court, in denying a hearing after the decision of this court, said: "The canal is constructed for public purposes and to serve the purpose of distribution of water to public use." The reference was to the canal which was used by the corporation defendant herein for the purpose of conveying the water for the irrigation of the lands within the district. The case was held to be one falling within the constitutional provision that "private property shall not be damaged for public use."

In fact, it has been consistently held by the supreme court from the beginning that these districts created under the elaborate scheme devised for their organization and operation by the legislature are public agencies for the promotion of a public purpose. While the primary object is to secure the distribution of water for irrigation, and while the mere furnishing of water for irrigation might involve only the exercise of a proprietary function in the case of a municipal corporation, yet the situation and condition of the land in these districts are so peculiar and the public is so vitally interested in the project that the purpose is regarded not only as for the advancement of the individual welfare but for the promotion of the public interest. If appellant's' contention

be accepted as sound it would follow that we have the anomalous situation of a *public* agency created for the mere purpose of exercising a *private* right or privilege. This view would necessitate the adoption of an entirely different theory from what has prevailed in this state for the justification of this legislation.

It would also destroy the foundation for the conclusion reached by the United States supreme court in the well-considered case of *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112 [41 L. Ed. 369, 17 Sup. Ct. Rep. 56, see, also, Rose's U. S. Notes], which decision has been approved and followed by the supreme court of this state. Therein the validity of the Wright Act was assailed upon various grounds, one of which is that it provided for the assessment of lands and the taking of property for a private purpose. Manifestly, this attack challenged the integrity of the whole scheme, and it received careful consideration at the hands of the court. In the opinion it is said: "Coming to a review of these various objections, we think the first, that the water is not for a public use, is not well founded. . . . Is this assessment, for the nonpayment of which the land of the plaintiff was to be sold, levied for a public purpose? The question has, in substance, been answered in the affirmative by the people of California, and by the legislative and judicial branches of the state government." The court then calls attention to section 1 of article IV of our state constitution, section 12 of said act, as amended in 1891 (Stats. 1891, p. 145), and the following decisions of the supreme court of this state: *Turlock Irr. Dist.* v. *Williams,* 76 Cal. 360 [18 Pac. 379]; *Central Irr. Dist.* v. *De Lappe,* 79 Cal. 35 [21 Pac. 825]; *In re Madera Irr. Dist.,* 92 Cal. 296 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272]. After stating that the foregoing considerations are not necessarily binding upon the federal courts the opinion proceeds:

"It is obvious, however, that what is a public use frequently and largely depends upon the facts and circumstances surrounding the particular subject matter in regard to which the character of the use is questioned.

"To provide for the irrigation of lands in states where there is no color of necessity therefor within any fair meaning of the term, and simply for the purpose of gratifying the taste of the owner, or his desire to enter upon the cultiva-

tion of an entirely new kind of crop, not necessary for the purpose of rendering the ordinary cultivation of the land reasonably remunerative, might be regarded by courts as an improper exercise of legislative will, and the use might not be held to be public in any constitutional sense, no matter how many owners were interested in the scheme. On the other hand, in a state like California, which confessedly embraces millions of acres of arid lands, an act of the legislature providing for their irrigation might well be regarded as an act devoting the water to a public use, and therefore as a valid exercise of the legislative power. . . .

"Viewing the subject for ourselves and in the light of these considerations we have very little difficulty in coming to the same conclusion reached by the courts of California.

"The use must be regarded as a public use, or else it would seem to follow that no general scheme of irrigation can be formed or carried into effect. In general, the water to be used must be carried for some distance and over or through private property which cannot be taken *in invitum* if the use to which it is to be put be not public, and if there be no power to take property by condemnation it may be impossible to acquire it at all. The use for which private property is to be taken must be a public one, whether the taking be by the exercise of the right of eminent domain or by that of taxation. (*Cole* v. *La Grange,* 113 U. S. 1 [28 L. Ed. 896, 5 Sup. Ct. Rep. 416, see, also, Rose's U. S. Notes].)"

We reiterate, that this legislation, involving as it does the levying of assessments and the forced sale of property for the payment thereof, the exercise of the right of eminent domain, the issuance of bonds and the construction of valuable improvements, must fall to the ground if it has been conceived and enacted for the furtherance of a private purpose. But the fact is, and so recognized by the authorities, that what might be under some circumstances a mere private business is under the situation that characterizes these irrigation districts a matter of public concern. It may be added that even in the case of municipal corporations under some circumstances the furnishing of water may be regarded as a public or governmental function. (3 Dillon on Municipal Corporations, sec. 1303.)

It is manifest that to uphold the complaint herein as stating a cause of action against the corporation we must

take the position that the district is concerned in its operations only with private matters. This follows for the reason that the complaint does not specify for what purpose the cement was to be used. If it could be legally devoted by the district to any public purpose, it would be necessary to negative that condition by alleging facts showing that the district was promoting a proprietary right in the use of the cement at the time of the accident. There is no such allegation. Indeed, the complaint is so meager in that respect, the allegation being merely that the defendants left and permitted to remain upon the highway in said district "certain sacks of cement and material for construction work," that it may be doubted whether it sufficiently appears that the construction work was to be done in the district, or by defendants, or in pursuance of *any* purpose that the district might legally prosecute. At any rate, for the reason before declared, the complaint fails to state a cause of action against the district.

We do not understand appellant to contend that the statute has imposed upon the district liability for private injuries resulting from the negligence of its officers or agents. It is true that the statute authorizes suits to be brought by and against them, but it does not purport to extend their liability beyond the general rule. The language authorizing the board of directors "to sue, appear and defend in all courts, actions, suits or proceedings" is to be understood as applying to such actions, etc., as a public corporation might be subject to in carrying out the purposes of the act. If the district, as a public corporation, was not liable for damages under such circumstances as appear in the complaint, the word "actions" is not to be construed as enlarging the liability of the district to include such a case. (*Markey* v. *Queen County,* 154 N. Y. 675 [39 L. R. A. 46, 49 N. E. 71].)

In this connection respondents call attention to the form of expression used by various authorities to denote the necessity for a positive enactment of the legislature to impose this liability upon such public agencies. Without quotation it is sufficient to cite them as follows: *Kellar* v. *Los Angeles, supra; Abbott* on municipal corporation, secs. 955, 956; *Barnett* v. *Contra Costa,* 67 Cal. 77 [7 Pac. 177]; *Todd* v. *Kaw Valley Drainage District,* 109 Kan. 754 [201

Pac. 1096]; *Board of Improvement* v. *Moreland,* 94 Ark. 380 [21 Ann. Cas. 957, 127 S. W. 469]; *Chope* v. *Eureka,* 78 Cal. 588 [12 Am. St. Rep. 113, 4 L. R. A. 325, 21 Pac. 364]; *Brunson* v. *Santa Monica,* 27 Cal. App. 89 [148 Pac. 950].

The pleading is also radically defective as to the trustees of the district. It appears that they did not personally leave the material thus exposed, and it is not claimed that they had knowledge of the condition or that it was through their aid or encouragement that the said material was allowed to remain in its unguarded and unsafe situation.

Since it is alleged merely that they performed the negligent acts "by their agents and servants" they can be liable only by reason of the application of the doctrine of *respondeat superior.* But that principle does not apply to a case like this where trustees or other public officers are sought to be bound by the negligence of subordinate officers or employees unless there has been a failure to exercise care in the selection of such inferior officers. This necessary condition of liability does not appear at all in the complaint. (*Dobbins* v. *Arcadia,* 44 Cal. App. 181 [186 Pac. 190].)

In *Baisley* v. *Henry,* 55 Cal. App. 760 [204 Pac. 399], it is said: "As the agents of the city, defendants are not liable in an action of tort to plaintiff a stranger, for the negligence of their coservant or agent. The rule is that an agent is not in general liable to third persons for the misfeasance or malfeasance of a subagent employed by him in the service of his principal, unless he is guilty of negligence in the appointment of such agent, or improperly cooperates in the latter's acts or omissions. (2 C. J. 829.)" It was therefore held that, since it was sought to charge the officers of the city for the negligence of their employees, the complaint failed to state a cause of action because there was no allegation of negligence in the selection of such employees.

[1] We may summarize our conclusions as follows: 1. Whatever may be the recognized rule in other jurisdictions under similar legislation, an irrigation district organized under the Wright Act or California Irrigation District Act must be deemed a public agency created for a public purpose; 2. Such agency is not subject to an action for damages resulting from the negligence of its officers or agents

in the absence of a statute expressly imposing such liability; **[2]** 3. That no such liability is expressly imposed in or by the law providing for the organization and government of such districts or by any other statute of this state; **[3]** 4. That no cause of action is stated against the individual respondents for the reason that they did not participate in nor encourage the act of negligence that resulted in the injury nor have any knowledge of it, and because it appears that whatever negligence existed was the result of the acts of subagents or employees of the district without any negligence on the part of the trustees in the selection of such subagents or employees.

The judgment is affirmed.

Hart, J., and Finch, P. J., concurred.