[Civ. No. 3997. Third Appellate District.—March 19, 1930.]

A. H. MEYER, Respondent, v. STATE LAND SETTLEMENT BOARD (a Body Corporate), Appellant.

578

U. S. Webb, Attorney-General, Frank English and Charles A. Wetmore, Deputies Attorney-General, and Bond & Deirup for Appellant.

Ware & Ware for Respondent.

PLUMMER, J.—While this action is before us upon appeal, we have here only to consider the petition of the defendant and appellant for a writ of *supersedeas* pending appeal.

The record shows that in the above-entitled action a judgment was entered in favor of the plaintiff in the trial court for the sum of $9,500 and costs, from which judgment the defendant has appealed. Not having given any stay bond, the plaintiff took out and placed in the hands of the sheriff of Butte County an execution, under which the sheriff proceeded to levy upon certain lands described in the petition, and also proceeded to serve a garnishment upon the First National Trust and Savings Bank of Chico, purporting to levy upon all moneys, effects and credits in said bank under the control of the State Land Settlement Board, the levy and garnishment herein referred to being made upon the theory that the lands described and the moneys referred to were subject to execution. In the matter now before us it is urged by the petitioner that under the provisions of section 1058 of the Code of Civil Procedure, no undertaking to stay execution in this action is requisite, and further, that the properties referred to belong to the state of California, and therefore are not subject to execution.

An answer to these questions requires a *résumé* of the acts of the legislature relative to the State Land Settlement Board, and the purposes for which the board was created.

The act of the legislature approved June 1, 1917 (Stats. 1917, p. 1566, Act No. 8008, Deering's General Laws), sets forth in the first section that the land settlement problem is of great importance to the welfare of the people of the state of California; that it is the purpose of the act to improve the general economic and social conditions of agricultural settlers within the state. This act was amended from time to time, but the essential purposes so declared have remained unchanged by any of the subsequent enactments.

Section 2 of the act, in order to carry out the objects thereof, created a State Land Settlement Board to consist of five members to be appointed by the Governor. This provision has been amended from time to time, as will hereafter appear. Provision is then made for the designation of one of the members as chairman of the board, the employment of a secretary, and such other expert technical and clerical assistants as might be required; the compensation of the officers to be fixed by the board of control, with the approval of the Governor.

Section 3 of the act sets forth that "The State Land Settlement Board, hereafter called 'The Board,' shall constitute a Body Corporate with the right, on behalf of the State, to hold property, receive and request donations, sue and be sued, and all other rights provided by the Constitution and laws of the State of California as belonging to Bodies Corporate."

The different sections of the act then provide for carrying the same into execution relative to the selection of lands, purchase of lands, sale of lands, etc., setting forth in great detail all of the acts which The Board so created was empowered to perform.

Then follows section 25, making appropriation of the sum of $260,000, out of any moneys of the state treasury, not otherwise appropriated. This section contains the following: "Of this amount the sum of $250,000 shall constitute a revolving fund to be known as 'The Land Settlement Fund,' which is calculated to be returned to the state with interest at the rate of 4 per cent per annum within a period of fifty years from the date of the passage of this act"; etc.

By an act of the legislature approved May 16, 1927 (Stats. 1927, p. 943), the position of all the officers of the State Land Settlement Board was abolished, and by section 361f of the Political Code, it was provided that the Department of Agriculture should succeed to, and was vested with all the duties, powers, purposes, responsibilities and jurisdiction of the State Land Settlement Board, and of the several members, officers, deputies and employees thereof. It was further provided that all the duties, responsibilities and powers that had theretofore devolved upon the State Land Settlement Board were transferred to the Department of Agriculture. This section contains, in addition to what

we have said, the following: "For the purposes of this article, the terms 'State Land Settlement Board,' 'member of State Land Settlement Board,' or similar designation shall be construed to mean and refer to the Department of Agriculture."

Section 361e of the Political Code for the purposes of carrying out the functions and completing the work of the State Land Settlement Board, specified that the board should thereafter consist of three members, to wit: the director of agriculture, state engineer, and the director of finance of the state of California, all acting *ex officio*.

Section 361f, to which we have referred, was again amended by an act of the legislature, approved May 20, 1929 (Stats. 1929, p. 677). Likewise, section 361e of the Political Code was amended at the same time so as to provide that thereafter the persons having charge of the state land settlement affairs should be the director of finance, the director of public works and the director of agriculture, all acting *ex officio*. This act has in view the closing up of the business affairs of the State Land Settlement Board.

Section 4 of the original act (Stats. 1919, p. 839, sec. 2) provided for the State Land Settlement Board acquiring property for the state, the language of the section, in this particular, reading: "For the purposes of this act, the Board may acquire, on behalf of the state, by purchase, gift, or the exercise of the power of eminent domain," etc.

By the acts referred to, and especially section 361f, *supra*, at the time of the beginning of this action, the term "State Land Settlement Board" was defined to be the Department of Agriculture, and the use of those words would be held to be the same and mean the same as the words "Department of Agriculture." In other words, the use of the expression "State Land Settlement Board" legally meant the Department of Agriculture. From this it follows that the title in this action, using the State Land Settlement Board, must be held to be the same as though the title read "Department of Agriculture," and of which, so far as the functions of the State Land Settlement Board were to be performed, devolved upon three state officers, to wit, the director of public works, the director of finance and the director of agriculture. Section 4 of the act, as we have shown, provided for the acquiring of property in behalf of

the state. There is no provision in the act as originally adopted or as set forth in any of the amendments thereto, under and by virtue of which the State Land Settlement Board or the Department of Agriculture, or any of the state officers charged with the duties to be performed under the acts referred to, could acquire any interest or ownership whatsoever in either the lands or the moneys controlled by them in carrying out the purposes of the act. ▮ It will also be observed that while the legislature declared the State Land Settlement Board to be a body corporate, it is only a corporation by virtue of legislative fiat, having no articles of incorporation or other rules governing its procedure, other than as set forth in the various sections of the act charging individual officers with the performance of the duties therein specified. There is nothing in the act, or any of the amendments thereto, giving the State Land Settlement Board the powers and functions of a private corporation, in the sense that it has any ownership or interest whatever in any property upon which The Board was required to administer. While the State Land Settlement Board, as a corporate body, has not at any time been charged with the performance of any governmental function, it is essentially public in its nature in that it is called upon to deal only with property belonging solely to the state of California. While its duties were proprietary in character, The Board had no proprietary interest or ownership. In these respects it possessed none of the attributes of either a private or a municipal corporation, and therefore the principles of law relating to the acts of private corporations or municipalities acting in a proprietary capacity controlling property of which such corporations are owners, are wholly inapplicable. It may be said that the State Land Settlement Board, as a body corporate, is only a legal fiction or a convenience by means of which the state could embark in a colonization or land settlement experiment.

In addition to the original appropriation made by the legislature, the record shows that large sums of money have been advanced under successive acts of the legislature, from time to time, and that all of the money entering and invested in the enterprise came from funds, so far as the record shows, belonging to the state of California. That no other than the state of California has any ownership in the

property involved in this action will further appear by reference to the case of *State Land Settlement Board* v. *Henderson,* 197 Cal. 470 [241 Pac. 560]. In this action it was held that all lands held by the state for settlement under the terms of the acts to which we have referred belonged to the state and were exempt from taxation under section 1 of article XIII of the Constitution.

We may now consider the provisions of section 1058 of the Code of Civil Procedure. That section reads: ''In any civil action or proceeding where the state or the people of the state is a party-plaintiff, or any state officer in his official capacity, or on behalf of the state, or any county, city and county, city or town, is a party-plaintiff or defendant, no bond, written undertaking or security can be required of the state or the people thereof, or of any officer thereof, or of any county, city and county, city or town, but on complying with the other provisions of this code, the state or the people thereof, or any state officer acting in his official capacity have the same rights, remedies and benefits as if the bond, undertaking or security were given and approved, as required by this code.'' As we have seen, the state is the real party in interest in this action. It is the state's property only that is involved. And as we have further seen, even though the title of this action reads against the State Land Settlement Board, it is in law and in fact against the Department of Agriculture. In other words, against the state of California, by and through its Department of Agriculture; and as we have further seen, is represented, for the purposes of the act in question, by three state officers, and their acting, by virtue of their official capacity, on behalf of the state. The State Land Settlement Board, as a corporate entity, is not acting at all; as a corporate entity, its functions are ended, save and except as the requirements of the several acts necessitate the continuance of the legal fiction in order that the agricultural adventure of the state may be brought to a close. Even the name ''Land Settlement Board'' has been, by legislative act, transmuted into the meaning of ''Department of Agriculture.'' The officers of the State Land Settlement Board no longer exist. State officers only, in their official capacity as *ex officio,* are administering the affairs of the business herein referred to, and are doing so in behalf of the state. While the sec-

tion does not exempt, in so many words, the state from giving an undertaking on appeal when it is a party defendant, it has been so construed. (*San Francisco Law & Collection Co.* v. *State,* 141 Cal. 354 [74 Pac. 1047].) Likewise, it is held that no undertaking on appeal is required of an officer of a county, city or town when such officer represents his county, city or town. (*Lamberson* v. *Jeffords,* 116 Cal. 492 [48 Pac. 485].)

By virtue of the different provisions of the acts of the legislature to which we have referred, three state officers are, in fact, acting in their official capacity in behalf of the state. They are acting under the legal designation of the Department of Agriculture, which includes the title used in this cause, and these three state officers are acting as fully and completely, under the designation of "Department of Agriculture," as though they appeared in their individual names. In this particular the law will regard the substance of the controversy. The fact that state property alone is involved, and the fact that officers of the state are acting in behalf thereof, even though the designation does not reveal the true identities, does not render section 1058 of the Code of Civil Procedure inapplicable. We see no escape from the conclusion that section 1058 of the Code of Civil Procedure must be construed as applying to actions such as are here presented, and that no stay bond is necessary.

There is a further reason why the writ of *supersedeas* should be issued in this case. The existence of the levy and the garnishment tends to hinder and embarrass the Department of Agriculture in the administration and disposal of property belonging to the state. In an elaborate argument the respondent has set forth numerous authorities to the effect that property held by corporations and used in a proprietary capacity may be levied upon and sold under execution. The basis for this argument is found in 23 C. J. 355, section 105, where the rule relied upon is stated as follows: "Where property of a municipal or other public corporation is sought to be subjected to execution to satisfy judgments recovered against such corporation, the question as to whether such property is leviable or not is to be determined by the usage and purposes for which it is held. The rule is that property held for public uses, such as public buildings, streets, squares, parks, promenades, wharves,

landing places, etc., and generally everything held for governmental purposes, is not subject to levy and sale under execution against such corporation. . . . But where a municipal corporation or county owns, in its proprietary, as distinguished from its public or governmental capacity, property not useful or used for a public purpose, but for *quasi* private purposes, the general rule is that such property may be seized and sold under execution against the corporation precisely as similar property of individuals is seized and sold." Numerous cases are cited supporting the text just quoted. There can be no question but that the law set forth by respondent, and the cases cited, amply uphold the doctrine that property held for proprietary purposes by a municipality may be subjected to levy and sale under execution, and with the doctrine set forth in the cases cited by respondent we fully agree, but so far as applied to the case at bar, the whole argument is based upon a false premise. The State Land Settlement Board never did, does not now, nor did any of the officers at any time mentioned in the acts, nor do any of the officers mentioned in the act as it now stands, own any interest in or to the property sought to be levied upon in this action. It is the property of the state that is sought to be subjected to the satisfaction of the plaintiff's claim, through the medium of an execution.

Similar questions have been presented and decided adversely to the respondent's contention, both by the Supreme Court, and by the District Court of Appeal of this state. In *San Francisco Sav. Union* v. *Reclamation Dist.*, 144 Cal. 639 [79 Pac. 374], where it was sought to enforce a judgment against the reclamation district by execution, it was held that such proceeding was inadmissible, and that the only remedy was by way of *mandamus* to require the levy of an assessment.

In *People* v. *Honey Lake Valley Irr. Dist.*, 77 Cal. App. 367 [246 Pac. 819, 821], this court, speaking through Presiding Justice Finch, said: "Had the appellants been given judgment in this action, such judgment could not be enforced by an execution against the district, but only by a suit in *mandamus* against the Board of Supervisors to compel the levying of an assessment to raise money with which to pay their claims." (Citing authorities.)

As stated in *Westinghouse Elec. Co.* v. *Chambers*, 169 Cal. 131 [145 Pac. 1025, 1026], the general rule is well established that ''a judgment against the state, in cases where the state has permitted actions to be maintained against it, merely liquidates and establishes the claim against the state, and, in the absence of an express statute so providing, such judgment cannot be collected by execution against the state or its property,'' etc. We do not need to cite the authorities, which are legion, to the effect that where state property is held in trust, such property cannot be taken and sold upon execution. Our attention has been called to no act, and we have been unable to find any act of the legislature authorizing state property to be sold upon execution, whether such property is used either in a governmental or in a proprietary character. The purpose or capacity in which state property is held does not, so far as we have been able to ascertain, alter the rule that state property cannot be levied upon and sold, save and except as permitted by the legislature, and not being permitted, it cannot be done.

Here, again, we may refer to the case of *State Land Settlement Board* v. *Henderson, supra,* wherein it is held that the property referred to in the land settlement acts which we have cited is state property. The reasoning of that case is full and complete, and is decisive as to the ownership of the property involved herein.

Without further citation of authorities, we are satisfied that the petition of the defendant and appellant should be granted, and a writ of *supersedeas* issued herein as prayed for. And it is so ordered.

Thompson (R. L.), J., and Finch, P. J., concurred.