[Sac. No. 5161. In Bank.—November 28, 1938.]

EL CAMINO IRRIGATION DISTRICT (a Public Corporation and Body Politic), Respondent, v. EL CAMINO LAND CORPORATION (a Corporation) et al., Appellants.

A. L. Garvey and Curtiss E. Wetter for Appellants.

L. C. Smith for Respondent.

Harry W. Horton, George R. Kirk, Hankins & Hankins, C. F. Metteer, Arvin B. Shaw, Jr., Thomas C. Boone and A. L. Cowell, as *Amici Curiae,* on Behalf of Respondent.

THE COURT.—Plaintiff El Camino Irrigation District was organized April 12, 1921, under the California Irrigation District Act, and comprises 7546.5 acres of land in Tehama County. Its outstanding bonds, issued on November 1, 1926, now amount to $423,000. Defendant El Camino Land Corporation is the owner of about $302,000 of said bonds. In October, 1935, said defendant brought an action against the district on some of the past due bonds and interest coupons, and a judgment was entered in its favor May 15, 1936, for $40,390.

Upon entry of the judgment said defendant had execution issued, and levied on certain lands previously acquired by the district at sales for delinquent assessments, and deeded to the district after expiration of the redemption period. Of the 7546.5 acres of the district, about 5,500 had already been so transferred, and the rest were in default. The district then brought this action to enjoin the said defendant and defendant sheriff from holding the contemplated sale, on the ground that the lands were not subject to execution. The lower court granted the injunction, and defendants appealed.

The economic background of this and certain other related cases has been fully set forth in our opinion in *Provident Land Corp.* v. *Zumwalt et al.,* Sac. No. 5133 (*ante,* p. 365 [85 Pac. (2d) 116]), this day filed. It is therein pointed out that a number of irrigation districts have suffered almost complete delinquency in assessments, followed by the taking over of the bulk of the land by the districts. The land thus acquired by a district is not subject to assessments and hence produces no revenue except minor amounts from rentals. Such districts are in serious default in their bond payments, for the normal method of payment provided by statute, namely, assessment of the land, has become ineffective. Bondholders, unable to obtain any payments, have sought to discover some other means of enforcing their obligations. The broad question, underlying this group of cases is, as we said in the Provident Land Corporation case, *supra,* "whether

unpaid bondholders, in the unusual situation where there is wholesale delinquency in assessments, wholesale default in bond payments, and acquisition of substantial portions of the land by the district itself, have any special equitable rights or remedies, in addition to those expressly stated in the stat- ute''. We held in that case that revenues from rentals of these tax-deeded lands were subject to the claims of bond-holders, thereby establishing the rule that the statutory remedy of *mandamus* to compel levy of assessments was not, in these circumstances, the sole means of relief for unpaid bondholders. The question now presented is whether the bondholders may pursue the legal remedy of execution against the tax-deeded lands themselves.

Defendant's argument in favor of execution may be summarized as follows: All property is subject to levy unless expressly made exempt by law, and this is true of public corporations as well as private persons. Property of a public corporation is exempt only where it is held for a public use; where held in a proprietary capacity and not devoted to public use, it is subject to execution. As applied to irrigation districts, this doctrine would exempt the operative property, e. g., the irrigation works, but not the tax-deeded lands.

Before discussing this contention we may briefly notice the further argument that it will be highly beneficial to force sale of these lands to private persons, who will become obligated to pay assessments, whereas now, with title in the district itself, the lands are free from assessments and produce no revenue. Such a proposition, even if sound, could hardly be deemed sufficient justification for subjecting exempt public lands to execution. But we are bound to observe that there is grave doubt as to whether defendant's remedy would produce the suggested result. *Amicus curiae* has persuasively argued that if any buyers can be found, which is extremely questionable, they, faced with huge pyramided assessments, will in all likelihood prove as recalcitrant as the old, and will merely hold the land without any payments for the period of some five cropping seasons until they are again taken over by the district after expiration of the redemption period. The recent history of the districts lends support to this prophecy (see *Provident Land Corp.* v. *Zumwalt, supra*), and we are inclined to believe,

therefore, that were it legally possible to execute on these lands, the bondholders as a group would derive little benefit from the procedure. No substantial revenue could be expected, and court costs and expenses of execution would add further amounts to the already staggering burden of indebtedness of the districts. ██ Moreover, to permit successful judgment creditors, whose bonds may not be prior in registration, to be paid by the proceeds of execution sales, would result in an unjustified preference in favor of those who brought the actions and procured the levies. The lower court in the instant case made an express finding to this effect, and the procedure, unless restricted in some manner unknown to us, would operate to violate the rule of priority established by the decisions in this state. (*Bates* v. *McHenry*, 123 Cal. App. 81 [10 Pac. (2d) 1038]; *Selby* v. *Oakdale Irr. Dist.*, 140 Cal. App. 171 [35 Pac. (2d) 125]; *Strasburger* v. *Van Delinder*, 17 Cal. App. (2d) 437 [62 Pac. (2d) 387]; *Shouse* v. *Quinley*, 3 Cal. (2d) 357 [45 Pac. (2d) 701].) It seems clear, therefore, that neither public policy nor the plan of the Irrigation District Act favors the position of defendant, and with this observation we turn to a consideration of the principles governing execution on public property.

██ There is a general doctrine, settled by numerous authorities, that land owned by the state or its agencies and held for a public purpose, is not subject to attachment or execution in the absence of an express statute permitting it. It is immaterial that there is no statute expressly exempting such property from execution. (*Westinghouse Elec. & Mfg. Co.* v. *Chambers*, 169 Cal. 131, 135 [145 Pac. 1025]; *Meyer* v. *State Land Settlement Board*, 104 Cal. App. 577, 585, 586 [286 Pac. 743]; *People* v. *San Joaquin Valley Agr. Assn.*, 151 Cal. 797, 806 [91 Pac. 740]; *San Francisco Savings Union* v. *Reclamation Dist.*, 144 Cal. 639, 648 [79 Pac. 374]; *Tulare Irrigation Dist.* v. *Collins*, 154 Cal. 440, 442 [97 Pac. 1124]; *People* v. *Honey Lake Valley Irr. Dist.*, 77 Cal. App. 367 [246 Pac. 819].)

██ It is true that a few decisions in this state have recognized the familiar distinction between proprietary and governmental functions and uses, and have declared that property owned by a municipal corporation in its proprietary capacity, and not devoted to nor held for public use, is not exempt from execution. (See *Marin Water & Power Co.* v.

*Sausalito,* 49 Cal. App. 78, 83 [193 Pac. 294]; *Kubach Co.* v. *Long Beach,* 8 Cal. App. (2d) 567 [48 Pac. (2d) 181].) Plaintiff vigorously attacks these cases, pointing out that the remarks in the Marin Water and Power Co. case were *dictum,* since the court actually held the particular property not subject to execution; and that the Kubach Co. case relies largely on that *dictum,* with no hearing sought in this court. Other criticisms of the latter case have been made, e. g., that it defeats the statutory protection enacted in 1901 (Deering's Gen. Laws, Act 3918) enabling a city to repay a judgment creditor in ten instalments out of funds raised by tax levies. (Note, 9 So. Cal. L. Rev. 415; see, also, 49 Harv. L. Rev. 489.) But we do not find it necessary to re-examine the rule of that case, since it is clearly distinguishable both on the facts and the legal issues involved, from the instant case. The Kubach Co. case held that the money from lessor's oil royalties on city-owned land under lease was subject to execution; the opinion stressed the fact that the lessor's interest in an oil lease can be sold separate and apart from the land, and that a levy upon such interest is not a levy upon the land itself. The court was not called upon to determine whether the land itself was subject to execution, and expressly so states. (8 Cal. App. (2d) 578.)

When we consider the precise legal question before us it is equally apparent that this decision is not controlling. Defendant has attempted to lump together all public bodies and agencies, and to make the characterization of governmental or proprietary use applicable to all. But the cases make a sharp distinction between municipal corporations, such as the cities in the Kubach Co. and Marin Water and Power Co. cases, and state agencies such as irrigation or reclamation districts. These latter are agencies of the state whose functions are considered exclusively governmental; their property is state owned, held only for governmental purposes; they own no land in the proprietary sense, within the rule of defendant's cases. (See *Whiteman* v. *Anderson-Cottonwood Irr. Dist.,* 60 Cal. App. 234 [212 Pac. 706]; *Turlock Irr. Dist.* v. *White,* 186 Cal. 183, 187 [198 Pac. 1060, 17 A. L. R. 72]; *Wood* v. *Imperial Irr. Dist.,* 216 Cal. 748, 752 [17 Pac. (2d) 128].) Once it is established that the property is owned by the state or its agency, rather than by a municipal corporation, the rule of the Kubach Co. case

becomes inapplicable. "Our attention has been called to no act, and we have been unable to find any act of the legislature authorizing state property to be sold upon execution, whether such property is used either in a governmental or in a proprietary character. The purpose or capacity in which state property is held does not, so far as we have been able to ascertain, alter the rule that state property cannot be levied upon and sold, save and except as permitted by the legislature, and not being permitted, it cannot be done." (*Meyer* v. *State Land Settlement Board, supra,* at p. 586.)

There is another and conclusive answer to the contention of defendants, found in the terms of the Irrigation District Act. Section 29 of the act declares that property acquired by the district shall be held "in *trust* for, and is hereby *dedicated* and set apart to the *uses and purposes set forth in this act*". We have discussed the meaning and effect of this section in *Provident Land Corp.* v. *Zumwalt, supra,* and it is sufficient to point out here that the statute places these tax-deeded lands in a classification which necessarily makes them exempt from execution. The "uses and purposes" of the act are of course the improvement by irrigation of the lands of the district, governmental purposes under the authorities cited above. The lands are expressly "dedicated and set apart" for these purposes. It is impossible, in the face of such language, to say that any such property could be subject to levy on the ground that it was not held for a public use; the statute forecloses any argument on this point. This is recognized in the statement in the Marin Water and Power Co. cases, *supra*: " . . . property which it holds merely as a proprietor, devoting it to no use of a public character, such as lands acquired or held for other than public purposes *and not in trust for public use,* are subject to execution unless some statutory or constitutional provision forbids it". Lands held subject to a public trust cannot be subjected to execution. (See *Hart* v. *Burnett,* 15 Cal. 530.) In *Tulare Irr. Dist.* v. *Collins, supra,* the district had acquired land for the purpose of a reservoir, but the project proved unsound and was abandoned. A creditor with an unsatisfied judgment levied on that land, which the lower court found was wholly unnecessary for the irrigation plans of the district. Nevertheless it was held by this court that execution was improper and should be enjoined. The

opinion points out that the statute places all lands of the district in trust, dedicated and set apart to the uses and purposes of the act; that under the statute then in force there was not even the power of voluntary sale of the lands of the district; and suggests that the legislature might have reasonably provided for sale or execution of land of that type, thus relieving the same from the burden of the strict trust. The court then says (p. 442): "But in the absence of such expression these lands stand in precisely the same position as do the other lands of the district. Equally with such other lands they are impressed with the trust and equally they are exempt from execution, levy, and sale. This question as to pueblo lands was most learnedly considered in the leading case of *Hart* v. *Burnett*, 15 Cal. 530, and the principles there announced have never been departed from. These principles are equally applicable to the lands held under this public trust."

The view that the irrigation district land is free from execution is further supported by the holding of this court in *San Francisco Sav. Union* v. *Reclamation Dist.*, *supra*, the similarity in purpose of reclamation and irrigation districts being well established. In the light of these various decisions and the clear provisions of the California Irrigation District Act, we deem it unnecessary to discuss or distinguish the very few cases from other jurisdictions which defendant cites as persuasive herein.

It follows that the trial court properly enjoined the levy. The judgment is therefore affirmed.