TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 93-112 |
| of | : | |
| | : | MAY 4, 1993 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |
| | : | |

_____

CAL MINESINGER ("relator") has requested leave to sue DAVID L. SUMNER ("defendant") in quo warranto upon the following:

ISSUES OF FACT OR LAW

Does the doctrine of incompatible public offices preclude a person from holding simultaneously the offices of director, San Gorgonio Pass Water Agency, and director, Beaumont-Cherry Valley Water District?

CONCLUSION

The doctrine of incompatible public offices precludes a person from holding simultaneously the offices of director, San Gorgonio Pass Water Agency, and director, Beaumont-Cherry Valley Water District.

MATERIAL FACTS

On November 5, 1991, defendant was simultaneously elected in the County of Riverside, to the offices of director, San Gorgonio Pass Water Agency ("SGP"), and director, Beaumont-Cherry Valley Water District ("BCV"). The terms of the two offices commenced on December 6, 1991, and will expire on December 1, 1995. On November 19, 1991, defendant was sworn and subscribed the oath of office as director of SGP, and on November 25, 1991, he was sworn and subscribed the oath of office as director of BCV. BCV is located entirely within the territory of SGP.

ANALYSIS

In deciding whether to grant leave to sue in the name of the People of the State of California, we consider the following fundamental precepts which provide the basis for analysis:

1. 93-112

leave will be granted where there is a substantial question of law or fact which requires judicial resolution *and* where the action in quo warranto would serve the overall public interest. (75 Ops.Cal.Atty.Gen. 10, 11-12 (1992).)

This application for leave to sue concerns the common law doctrine of incompatible public offices. The doctrine prevents a person from holding simultaneously two public offices if the performance of the duties of either office could have an adverse effect on the other. (68 Ops.Cal.Atty.Gen 337, 338-339 (1985).) As explained by the Supreme Court in the landmark case of *People ex rel. Chapman* v. *Rapsey* (1940) 16 Cal.2d 636:

> "Two offices are said to be incompatible when the holder cannot in every instance discharge the duties of each. Incompatibility arises, therefore, from the nature of the duties of the offices, when there is an inconsistency in the functions of the two, where the functions of the two are inherently inconsistent or repugnant, as where antagonism would result in the attempt by one person to discharge the duties of both offices, or where the nature and duties of the two offices are such as to render it improper from considerations of public policy for one person to retain both. The true test is whether the two are incompatible in their natures, in the rights, duties or obligations connected with or flowing from them." (Id. at pp. 641-642.)

In 73 Ops.Cal.Atty.Gen. 268, 270 (1990), we summarized as follows:

> ". . . The *Rapsey* analysis has been followed and applied by later courts (see, e.g., *Mott* v. *Hortsmann* (1950) 36 Cal.2d 388, 391-392; *People ex rel. Bagshaw* v. *Thompson* (1942) 55 Cal.App.2d 147-150) and in opinions of this office (see, e.g., 67 Ops.Cal.Atty.Gen 409, 413 (1984)) in a variety of circumstances.

> "We have previously stated that only one potential and significant clash of duties need be found to render two offices incompatible. In 63 Ops.Cal.Atty.Gen. 623 (1980), for example, the offices of city mayor and airport district director were found to be incompatible even though there were currently `no significant "interactions" between the city and district.' (*Id*., at p. 624.) We concluded that in many situations that would arise `"in the regular operation of statutory plan,"' the person holding both offices would have `[t]he potential for significant clashes' of loyalties. (*Id*., at p. 627.)

> "If the two positions are `offices' and if they are `incompatible,' the consequence is that `"the mere acceptance of the second incompatible office <u>per se</u> terminates the first office as effectively as a resignation."' (*People ex rel. Chapman* v. *Rapsey, supra*, 16 Cal.2d 636, 644.)"

SGP was established and organized under the San Gorgonio Pass Water Agency Law. (Water Code - App. §§ 101-1 to 101-52.) We entertain no doubt that a director of the board of a "special act" water district holds a public office for purposes of the doctrine. We have previously determined that the director of the board of a California water district (75 Ops.Cal.Atty.Gen. 10, 13 (1992)), of a county water district (73 Ops.Cal.Atty.Gen. 268, 270 (1990)), of a community services district water agency (73 Ops.Cal.Atty.Gen. 183, 185 (1990)), and, indeed, of a "special act" agency (44 Ops.Cal.Atty.Gen. 37 (1964)), holds a public office.

BCV was established and organized under the Irrigation District Law. (Wat. Code, § 20500, et seq.)[1] We entertain no doubt that a director of an irrigation district holds a public office for purposes of the doctrine. We have previously determined that a director of a water conservation district holds a public office. (55 Ops.Cal.Atty.Gen. 36, 37-38 (1972).) As in the case of a water conservation district (§ 74000 et seq.), and of reclamation or drainage districts (*Western Assur. Co. v. Sacramento and San Joaquin Drainage Dist.* (1925) 72 Cal.App. 68, 72-73; 15 Ops.Cal.Atty.Gen. 89 (1950)), an irrigation district is a public agency formed and existing exclusively for governmental purposes (§ 20570; *Fallbrook Irrig. Dist. v. Bradley* (1896) 164 U.S. 112, 159-161; *El Camino Irrig. Dist. v. El Camino Land Corp.* (1939) 12 Cal.2d 378; *In re Madera Irrig. Dist.* (1891) 92 Cal. 296, 321-323; *Allen v. Hussey* (1950) 101 Cal.App.2d 457, 467; 15 Ops.Cal.Atty.Gen., *supra*, 89-90). Directors of an irrigation district are elected to fixed terms of office (§§ 20524, 21101, 21104), and are public officers of the state (*In re Madera Irrig. Dist., supra,* 92 Cal. at pp. 322-323).

Certain of the powers conferred upon SGP are noted as follows: (1) to acquire, or to contract to acquire, waterworks or a waterworks system, waters, water rights, lands, rights, and privileges; (2) to lease from any public agency all or any part of water storage, transportation or distribution facilities, existing waterworks or a waterworks system; (3) to sell water under the control of the agency to other public agencies within the agency; (4) to exercise the right of eminent domain to take any property necessary to supply the agency or any portion thereof with water; (5) to make contracts and do all acts necessary for the full exercise of its enumerated powers; (6) to join with other public agencies for the purpose of carrying out any of the powers of the agency, and for that purpose to contract with such other agencies for the purpose of financing such acquisitions, constructions and operations; (7) to commence, defend, or compromise any and all actions and proceedings which involve or affect the ownership or use of water or water rights; and (8) to establish and impose a facility capacity fee, which is in the nature of a connection fee, for the right to make a new retail connection to the water distribution system of any retail water distributor within the agency that obtains all or any portion of its water supplies from the agency. (App. §§ 101-15, 101-27.1.)

Some of the powers conferred upon BCV are noted as follows: (1) to acquire by any means any property to carry out its purposes, including any works by which land may be supplied with water for irrigation, and public buildings and grounds (§ 22425), and to contract for the acquisition and operation of any needed equipment to put water under its control to any beneficial use (§ 22231); (2) to sell or lease to other public agencies and districts property no longer necessary for district purposes (§§ 22500, 22505, 22506, 22526); (3) to contract for the lease or sale of any surplus water or use of surplus water for use within or without the district (§ 22259); (4) to exercise the right of eminent domain to take any property necessary to carry out its purposes (§ 22456); (5) to make and perform any contracts necessary to carry out the purposes of the district (§§ 22230, 22075, 22076); (6) to contract and perform any agreement with other public agencies for the exchange, transfer, or delivery to or by either or both parties of any water or water right (§ 22228); and (7) to commence and maintain any actions or proceedings to carry out its purposes, or affecting ownership or use of water or water rights within the district, and to defend any action against it (§§ 22650, 22654).

It is immediately apparent that in connection with the respective powers to enter into contracts involving matters of mutual concern, including the power to contract for the purchase, development, or sale of water with third parties or with each other (55 Ops.Cal.Atty.Gen. 36, 38 (1972)), to sue and be sued in the case of disputes respecting conflicting interests, to exercise the

---

[1] Unidentified section references herein are to the Water Code. The designation "App." refers to the uncodified special act establishing SGP which is found in the Water Code Appendix.

right of eminent domain, to determine whether to impose a facility capacity fee for new retail connections to BCV distributions systems, an individual holding both offices of SGP director and BCV director would be presented with the conflicting interests and considerations of the respective agencies. We have previously considered and now expressly reaffirm that similar conflicts of official duty render such offices incompatible as a matter of law. (75 Ops.Cal.Atty.Gen. 10, 13-14 (1992); 73 Ops.Cal.Atty.Gen. 183, 188 (1990).)

We note, however, that the doctrine, having its basis in common law, may be abrogated in material respect or in its entirety by appropriate legislation. In this regard, Civil Code section 22.2 provides: "The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this State, is the rule of decision in all courts of this State." (See *American Canyon Fire Protection Dist. v. County of Napa* (1983) 141 Cal.App.3d 100, 104-106; 74 Ops.Cal.Atty.Gen. 86, 87-88 (1991).) For example, the Legislature has expressly declared in Government Code section 61231 as follows: "Any person who is a director of an irrigation district may hold office as a director of a community services district and the holding of two such positions by such person at the same time shall not be incompatible." The invitation to extend this specific legislation by way of analogy to the offices in question, where the Legislature has not done so, is declined.

Finally, as set forth at the outset, the terms of the offices to which defendant was simultaneously elected are concurrent. Since entry upon a second incompatible office automatically vacates the first (75 Ops.Cal.Atty.Gen. 112, 114 (1992); 73 Ops.Cal.Atty.Gen. 268, 270 (1990)), a subsidiary issue which may arise for judicial determination concerns the identification of the office which was forfeited by defendant. While we do not purport to resolve the issue, it is noted that defendant first qualified by oath for the office of director of SGP on November 19, 1991, and subsequently qualified by oath for the office of director of BCV on November 25, 1991. (See Gov. Code, § 1777; Elec. Code, §§ 23109, 23111; § 21101; 72 Ops.Cal.Atty.Gen. 1, 5 (1989); cf. 75 Ops.Cal.Atty.Gen. 112 (1992) [simultaneous election; office first entered by oath vacated].)

PUBLIC INTEREST

As a general rule, we have viewed the existence of a substantial question of law or fact which calls for a judicial resolution as presenting a sufficient "public purpose" as to warrant the granting of leave to sue. (73 Ops.Cal.Atty.Gen. 183, 188 (1990).) Accordingly, leave will be denied only in the presence of other overriding considerations. (73 Ops.Cal. Atty.Gen. 354, 355 (1990).) We find no countervailing considerations herein. Rather, the public, SGP, and BCV each has an interest in the undivided loyalty of its public officers. (75 Ops.Cal.Atty.Gen. 10, 14 (1992).) The application for leave to sue in quo warranto is granted.

\* \* \* \* \*