[Civ. No. 6698. Third Dist. Feb. 26, 1942.]

WEST COAST LIFE INSURANCE COMPANY (a Corporation), Appellant, v. GLENN-COLUSA IRRIGATION DISTRICT et al., Respondents.

Keesling, Wayland & Eliot and Huston, Huston & Huston for Appellant.

Hankins & Hankins, P. J. Minasian, George R. Freeman, Elmer Laine and Rutledge & Rutledge for Respondents.

TUTTLE, J.—This action was brought to cancel a contract executed by defendant district, and defendant H. C. Stovall. Findings were made in favor of defendants upon all issues, and judgment was entered accordingly. The appeal is from the judgment.

The litigation arises out of the affairs of the Williams Improvement District situated within the boundaries of the Glenn-Colusa Irrigation District, and organized under the Statutes of 1927 (Statutes of 1927, p. 1415, Deering's Gen. Laws, 1937, Act 3877a) authorizing such organization to meet the situation of any tract or contiguous tracts of land within any irrigation district and susceptible of irrigation by a system of laterals, ditches and pipes or requiring a system of pumps for the irrigation thereof separate and apart from the main irrigation system of said district.

Section 10 of the act reads as follows:

"Said board of directors and all other officers of said irrigation district shall have all the rights, powers and privileges concerning said improvement district, and lands thereof and the proceedings herein provided for, as such board may have concerning the irrigation district, of which it is a part, and including the right of said district to condemn lands and to acquire, own and hold property within said improvement districts."

Under the statute, the Glenn-Colusa Irrigation District, through its directors, had the supervision and control of the

Williams Improvement District and exercised the same powers as conferred upon them by the Irrigation District Act.

Plaintiff is the owner and holder of certain obligations of the improvement district, known as warrants, which were issued by the irrigation district, which agreed to pay them. Such warrants matured January 1, 1932. They were unpaid when this action was commenced.

On April 2, 1936, the district was the owner, through tax sales, of practically all the land within the boundaries of Williams Improvement District, legally entitled, "Improvement District Number One of Glenn-Colusa Irrigation District." The price was $28,061.08, the amount of delinquent assessments, penalties and costs. The district was the sole bidder at such sales. On said date the irrigation district, through its board of directors, entered into a contract with defendant Stovall for the sale of said lands. Title to said land was to remain in the district until the full purchase price was paid and all conditions of the contract performed by Stovall. The total acreage sold was about 4000. By the terms of Stovall's contract he was given the right to purchase three thousand nine hundred sixty-five and 11/100 acres of lands in the district for the sum of $22,216.48. There was no cash payment. The first payment of $3,500 was to be evidenced by the promissory note of the buyer due August 1, 1936, with interest at the rate of five per cent per annum. The balance of the purchase price was payable in semi-annual installments of $935.82 with five per cent interest, payable on or before the first day of January and the first day of July in each consecutive year, commencing January 1, 1937. The contract also provided for: Payment by Stovall of all delinquent state taxes, which the evidence shows amounted to $17,000; payment by Stovall annually of "an amount equal to the amount which would be levied by the Irrigation District as assessments on such land for that year if legal title thereof were in buyer"; payment by Stovall annually or semi-annually of "all State and County taxes, levied upon said property during the 10 year term of this agreement"; payment guaranteed by Stovall of all tolls and charges "for water furnished by seller during the term of this agreement to any or all of the land, regardless of the person to whom such water is furnished"; payment by Stovall of an annual stand-by charge of $1,800 in the event

a single acre under lift No. 2 uses irrigation water; $1,080 in the event of operating lift No. 1 only.

The complaint, while it does not directly charge fraud, in effect makes such charge. It alleges:

"That said contract was entered into by said District without any notice whatever, and without inviting any bids or offers from any person other than the said H. C. Stovall; that said contract was not entered into by said District in such a manner as that a sale of said lands could be effected within a reasonable time at the fair market value thereof, and upon such terms as would serve to protect and benefit the interests of said District, the said landowners and contract-holders, and the plaintiff herein and other owners and holders of warrants issued by said District and unpaid; that said District did not give any information or publicity, or announce its intention to sell said lands prior to the making of said contract; *that the said District and the directors thereof and the said defendant Stovall entered into said contract for the purpose of preventing any person other than the said Stovall from buying or offering to buy any or all of said lands at the market value thereof, or at a price higher than that fixed by the terms of said contract;* that the prices fixed by said contract will not be sufficient to pay the amounts due the plaintiff herein on the principal and interest of the warrants hereinabove alleged and if said sale is consummated, the said plaintiff will suffer great and irreparable injury; that said contract was made for the purpose and with the intent to hinder, delay and defraud the plaintiff herein in collecting or attempting to collect the amounts due and to become due on said warrants." (Italics ours.)

It thus appears that the action is based upon the premise that there was no notice of the intended sale to Stovall, and the contract was therefore entered into for the purpose of preventing any person, other than Stovall, from buying said lands. It is also alleged that the value of said lands, when the contract was executed, was $150,000. A copy of the contract is made a part of the complaint, so that, in addition to the foregoing, it may be said that plaintiff relies upon inadequacy of price to support its theory of recovery. The charge that the contract was executed to hinder, delay and defraud plaintiff is not alluded to in the briefs, and it may

be fairly stated that the action is not regarded by the parties as what is commonly known as "a creditor's suit," under the provisions of part II, subdivision II, division IV of the Civil Code.

We have before us the sole question of the sufficiency of the evidence to sustain findings which are adverse to plaintiff upon all the issues made. At the outset we may observe that there is nothing in the record to show *actual fraud* upon the part of the district, its directors or officers. Out of fairness to appellant, we might add that it does not accentuate that issue. Rather, it relies upon (1) a breach of trust upon the part of the district and its officers, and (2), upon a lack of statutory authority to enter into such contract.

 It is contended by appellant that the district had no power to enter into a contract of sale. The extent of statutory direction for the sale of district-owned tax deeded lands, is found in section 29 of the California Irrigation District Act, reading in part as follows:

"The board of directors of said district may determine by resolution duly entered upon their minutes that any property, real or personal, held by said irrigation district is no longer necessary to be retained for the uses and purposes thereof and may thereafter *sell* or lease *such property upon such terms and conditions as may appear to said board to be for the best interest of said district.*"

Section 47 of the California Irrigation District Act reads in part as follows:

"Where property has been sold to the district and a deed for it has been given to the district as the purchaser, *such district shall have the same rights thereto,* and to the rents, issues and profits thereof *as a private purchaser.*" (Emphasis supplied.)

Section 15 of the California Irrigation District Act reads in part as follows:

"The Board of Directors shall have the power and it shall be their duty to manage and conduct the business and affairs of the district; make and execute all necessary contracts . . ." (Emphasis supplied.)

We think the foregoing sections are sufficient authority for the execution of the contract. The grant of the right to "sell" should be construed to include not only a sale for cash, but a sale in which the payment of the purchase price is made in installments. There is nothing in the cases cited by appel-

lant,—*Tulare Irrigation District* v. *Collins,* 154 Cal. 440 [97 Pac. 1124] ; *Provident Land Corporation* v. *Zumwalt,* 12 Cal. (2d) 365 [85 Pac. (2d) 116]—which supports the contention of appellant. On the contrary, in the last mentioned case the court says:

"Land coming into other private ownership is again liable for assessments (sec. 33), *and land in possession of the district should, if possible, be sold again, so that it may produce the required revenue.*" (Italics ours.)

It is next contended that the defendant directors held the land in trust for the creditors, and that the sale under the contract, in violation of such trust, was therefore void. We agree with the premise, but not with the conclusions which appellant contends necessarily flow therefrom. In the case of *Provident Land Corporation* v. *Zumwalt, supra,* the court said:

"Reading the two sections [Cal. Irrigation District Act, Secs. 29 and 47] together, the only reasonable interpretation is that the district may freely transfer, lease or otherwise deal with the lands in so far as the *power* is concerned, but the *lands* remain in trust and the district exercises its powers, however broad, as a trustee."

The foregoing pronouncement does not, however, authorize the judicial branch of the state to substitute its judgment for that of the directors of the district. It only requires that the latter act fairly in all matters respecting the proper discharge of their duties. .The economic conditions of the period, and various other factors which would necessarily enter into the transaction, were elements which would tend to move and actuate the directors in the exercise of their sound judgment and discretion. It is impossible for a record of this character to reflect all of such matters, or place them in their proper perspective. We might further add that the trust mentioned is not for the exclusive benefit of the creditors. As stated in *Clough* v. *Compton Delevan Irrigation District,* 12 Cal. (2d) 385, 388 [85 Pac. (2d) 126] :

"The property is by this language impressed with a public use, and the trust is for all the purposes of the act. Payment of the bondholders is such a purpose, as we have held in Provident Land Corporation case, *supra; but there are other purposes as well, and the bondholders cannot be considered exclusive beneficiaries,* even if the doubtful assumption be made that they, as individuals, are beneficiaries at all. Indeed, it

is futile to attempt to discover the 'beneficiaries' of the statutory trust created by Section 29.''

In our opinion, the property owners in the district are also beneficiaries of such trust. Two matters are relied upon by appellant to overthrow the finding mentioned. The first is the alleged inadequacy of price, and the second, the failure of the directors to give notice of the sale.

■ The attack made by appellant upon the adequacy of the price may be more properly considered as having to do with the consideration which the district received. The trial court found that such consideration was fair, reasonable and adequate. We think the record sustains such finding. In the first place the property is nothing more than "grain land," which was subdivided and covered with an enormous blanket of debt, in order to bring it under irrigation. According to the testimony of the secretary of the district, it was subject to a bonded debt of the irrigation district which amounted to $6 per acre. In addition, it was liable for a debt of $30 per acre to the improvement district. It had all been sold to the district under tax sales, and no property owner or security owner then appeared to protect their interests. In order to place the property upon the assessment rolls, it became necessary to put the title back into the hands of private owners. The sale to Stovall was then discussed at numerous meetings of the directors, and finally the contract in question was executed. Such a policy is approved in the Provident case, *supra*, in a quotation we have already made. The price was not the sole consideration of the contract. We have pointed out the other obligations assumed by Stovall. For illustration, the latter agreed to pay all delinquent state taxes against the property, which the evidence shows amounted to $17,000. It is true that one witness testified that the land was worth from $35 to $45 per acre. The trial court may not have been satisfied with such testimony. The purchase price and the other payments assumed by Stovall, would make the actual contract price about $10 per acre.

■ It is the rule that "mere inadequacy of price, however gross, is not a sufficient ground for setting aside a sale legally made." (*Jones* v. *Sierra Verdugo Water Co.*, 63 Cal. App. 254-263 [218 Pac. 454].) This rule is also applicable to a sale by a trustee. (26 R. C. L., sec. 145, page 1294.) We therefore conclude that there is no merit in the foregoing contention.

It is contended by appellant that no notice was given of the sale to Stovall. There is no statutory requirement for such notice. The matter is left to the sound discretion of the directors.

We conclude that the charges made by appellant are unfounded, and that the findings have ample evidentiary support. We are satisfied that the directors had no ulterior motives in dealing with Stovall as they did, but that they were applying to the problem .at hand their honest, considered judgment. If they were mistaken, or were wanting in business acumen, they were answerable to their electorate, but not to the courts.

The judgment is affirmed.

Thompson, Acting P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 23, 1942.