[Civ. No. 8842.   Third Dist.   Dec. 17, 1956.]

FRED B. REED et al., Appellants, v. OROVILLE-WYANDOTTE IRRIGATION DISTRICT, Respondent.

Clewe, Blade & McDonald and Clewe & Blade for Appellants.

Minasian & Minasian for Respondent.

VAN DYKE, P. J.—This action was brought by 45 persons who alleged they sued in a representative capacity for the purpose of having the 1953 assessment of the district declared void. The trial court upheld the assessment as equalized by the board of directors of the Oroville-Wyandotte Irrigation District; but as to 23 of the plaintiffs whose assessments had been increased during the equalization proceedings the court declared the increase invalid.

From the time of the organization of the district in 1919 to the assessment year 1952-1953 an assessment of $100 per acre and $100 per lot with only a few exceptions had been made. In 1953 the district employed a Mr. Ernst to appraise the property in the district. The assessment was then made by the assessor in accordance with the appraisals made by Mr. Ernst. The result was that the values arrived at varied greatly from the values fixed in the previous assessments. Residential lots were valued as high as $1,200 per lot. Lands planted to olives were assessed at $165 per acre, to oranges at $150. The assessment aroused much controversy. Some members of the board of directors believed the assessments not only lacked uniformity, but were illegal because improvements on the lands were assessed in contravention to the provisions of section 25500 et seq. of the Water Code, which direct that improvements shall not be included in determining the value of the land. The word "improvements" as used in the statute includes trees, vines, alfalfa, all growing crops, and all buildings and structures.

After receiving the assessment book, the board gave the required statutory notice that it would meet as a board of equalization. At the conclusion of the last equalization meeting a resolution was adopted by a divided vote which declared that the board had considered and investigated the valuation placed on each parcel of property to which an objection to the assessment had been made and had compared them with valuations placed on comparable land; that in addition members of the board had spent several days examining the lands in the district; that the members of the board possessed extensive knowledge of the properties and the land values; that the board concluded that the complaints disclosed that the lands throughout the district had been erroneously assessed; that uncultivated land had been assessed at less than its true value; that cultivated land had been assessed at more than its true value because the value of improvements had been included; that residential and commercial land was being assessed at a

value higher than its true value. The resolution concluded by ordering the assessments changed to conform to a formula adopted by the board. The effect of the formula on acreage property was to raise the value of all lands valued at less than $125 an acre and to reduce it on all lands valued over that amount. The assessment on all parcels of commercial and residential land less than one acre was reduced by 75 per cent of the assessor's valuation, though in no case was it reduced to less than $100 per lot. Except for a few individual assessments which were changed, the formula assessments became the final assessments.

The plaintiffs have appealed from the judgment of the trial court which declared the assessment valid. The district has not appealed from that part of the judgment which lowered some of the assessments.

■ Appellants' first assignment of error is that the board was without power to raise any of the assessments because there was no specific notice that the board intended to do so. A complete answer to this contention is found in the requirements of the statute as to notice. The statute merely requires that notice be given of the receipt of the assessment book and of the time, fixed by the board, when the board, acting as a board of equalization, will meet to equalize assessments. (Wat. Code, § 25550.) Implicit in such notice is notice that in exercising its powers as a board of equalization the board may change the valuations fixed by the assessor. The change may be either an increase or a decrease. The authorities cited by the appellants that valuations may not be increased without specific notice to the owners of the parcels whose valuations are changed are cases where the governing statutes specifically required notice of increase. The general rule is that where a statute fixes the date for the meeting of a board of equalization, taxpayers are bound to take notice thereof, and no other notice is necessary, unless expressly required by the statute, in order for the board to increase the assessment of a taxpayer. (51 Am.Jur., p. 706.) The statutes in question here do not require any other notice. Therefore, the notice given was sufficient to permit the board to change the individual parcel assessments whether the change was by way of increase or decrease.

■ Appellants' second contention is that the board was obligated to give notice of intention to make a blanket reduction in valuation of lots and homesites and to give to all an opportunity to be heard. They contend that failure to give

such notice rendered the action of the board wholly invalid. It appears from the record that as soon as the assessor's rolls were placed in public view as required by the statute, almost all of the valuations fixed therein gave rise to bitter controversy, and that as a result great numbers of dissatisfied taxpayers appeared at each of the board's sessions and expressed their views; that during the period the board was sitting as a board of equalization two members of the board went about the district examining into the various contentions made and inspecting properties, particularly with regard to the classifications ultimately adopted in the resolution as a basis for formula change of assessments, and that discussions ensued among the members of the board concerning what ought to be done by way of equalizing assessments. Several public meetings of the board were held. Various groups of contending taxpayers were represented by counsel who presented arguments to the board both of fact and of law. It is clear from the record here that the board labored long and assiduously before the equalizing resolution was adopted. Since the equalizing resolution was addressed to the correction of all inequalities, there is no more reason for requiring notice of the proposal to adopt the so-called blanket changes or formula adjustments than there was to give individual notice to various affected parcel owners of changes in individual assessments.

Appellants next contend that there was no evidence of market or cash values of individual parcels before the board and, therefore, it acted without evidence and had no power to take the action it took. This assignment of error is without support in and is contradictory to the record. It appears that the first meeting was attended by over 100 taxpayers, most of whom were lot owners. Almost the entire meeting was devoted to complaints of over-assessment by lot owners who substantiated their contentions by statements as to the value of their properties. At another meeting subdividers of areas within the district testified as to the value of their lots and as to various sales made of lots which had been improved and as to the costs per lot of the improvements. Persons appeared before the board and compared valuations of respective parcels, one with another, and group by group. Unsworn testimony was taken as to the various valuations of improved and unimproved acreages, and the assessor's valuations on large areas of undeveloped land were compared with the valuations placed on lands planted to pasture, orchards, and other crops. The record reflects that much of the testimony and much of the

personal investigation in the field made by the members of the board were addressed to the broad questions of equality of benefit and burden between the various classifications of property, such as unimproved acreage, improved acreage, small and large holdings, homesites and areas of lot size. In our view the charge that the directors acted without evidence is unsubstantiated except as it may be said that many parcels were not the subject of specific testimony. But specific testimony was not necessary, however valuable it might have been. ■ A court may not set aside the conclusion of assessing officers as to the value of property for purposes of taxation in the absence of fraud or malicious abuse of its powers. (*Wores* v. *Imperial Irr. Dist.*, 193 Cal. 609 [227 P. 181].) In the instant case the evidence shows that the members of the board made a good faith effort to equalize the assessments. The assessments arrived at are not necessarily discriminatory and inequitable. The findings of the board are conclusive on a court in such a case.

■ Appellants also contend that the board was not vested with plenary powers and could not reassess property on its own volition and on its own opinion without hearing evidence. A board of equalization possesses great powers as to raising or lowering assessments. It is the sole judge of questions of fact and of values of property. The power is given for the purpose of doing equal justice to each and every taxpayer. In order to do justice to all it must of necessity have the power to raise or lower assessments as may be warranted. The record does not support the contention that the power was exercised without hearing any evidence.

Appellants next contend that assessments or reassessments by the adoption of a formula are illegal. In support of this contention they cite *Rancho Santa Margarita* v. *San Diego County*, 126 Cal.App. 186 [14 P.2d 588], and *Shasta County* v. *Mountain Copper Co.*, 278 F. 155. The actions of the board here are not subject to the criticism voiced in the cited cases. In this case we have such a general attack by so many taxpayers representing every classification of property in the district that any attempt at individual assessment adjustment was impractical if not impossible within the 10 days allowed by statute. There were in the view of the board as expressed in its resolution basic objections to the assessor's list which required equalizing action and demanded a reexamination of the entire roll. Under the circumstances the board did not exceed its jurisdiction in the approach to the problem before it. As will

be seen from a consideration of the resolution the board passed, the board concluded that acreage holdings assessed below $125 per acre were under assessed and that acreage holdings assessed above that amount were over assessed. Without naming individual parcels, it broke these acreage holdings down into classifications and set up a schedule intended to equalize the assessments. Certainly it cannot be said from this record that the board's findings were so lacking in support that the board acted in an arbitrary manner. The same thing is true of the percentage reduction in the assessments of the individual parcels of land less than one acre in size. In the absence of fraud which was found not to have existed this court may not dispute the factual findings made by the board of equalization. We think that the result arrived at is not subject to the attack that it was the result of an invalid method of equalization. ▇ In order to sustain such an attack it must be shown that the board acted either arbitrarily or in such grossly inequitable and palpable disregard of the actual valuation of the properties that the conclusion must be reached that the action of the board was either actually or constructively fraudulent. (*Wores* v. *Imperial Irr. Dist.*, *supra*, p. 630.) The record does not support such a conclusion.

Appellants also contend that the adoption of the resolution constituted at least a constructive fraud on the taxpayers because one of the members of the board owned property which was reduced by a total of $46,000 by application of the formula assessment. Whether such facts constituted fraud was a question for the trial court to determine and, giving such facts their full operation, they do no more than raise a conflict in the evidence which was decided adversely to the appellants.

Appellants also contend that the judgment of the trial court is erroneous because it did not grant to all the property owners whose assessments were increased the relief granted those who were plaintiffs. Appellants claimed they sued in a representative capacity and that it follows that the relief granted to them should have been granted to all.

▇ But appellants overlook the effect of special statutory provisions governing representative suits attacking the validity as a whole of assessments levied by irrigation districts. It is of the utmost importance to irrigation districts that if it be claimed an assessment roll is wholly invalid the issue be speedily brought before a court by anyone desiring to object. The Legislature has provided a special method for

such determination. Sections 22670-22700, inclusive, of the Water Code provide as follows: ''A district may at any time after . . . the levy of any assessment bring an action in the superior court . . . to determine the validity of . . . the levy.'' ''If no proceedings have been brought by the district . . ., any district assessment payer may . . . within 30 days after the levy of any assessment bring an action in the superior court . . . to determine the validity of the assessment. . . . The district shall be a defendant.'' ''In a contest provided for by this article the court shall disregard any irregularity or omission which does not affect the substantial rights of the parties.'' ''The judgment shall declare the . . . levy either valid or invalid.'' ''No contest of any thing or matter herein provided shall be made other than in the time and manner herein specified.'' This action was brought within the time limited by the statute and as to all attacks made upon the validity of the assessment as a whole is governed by the foregoing statutory provisions. It is expressly declared that the adjudication in response to such a suit shall be limited to declaring the levy either valid or invalid. In such an action it is beyond the jurisdiction of the court to grant any other relief and particularly to grant therein to the plaintiff or plaintiffs who bring the action relief as to individual assessments.

Finally, appellants contend that certain findings of fact made by the court are in conflict with the general findings upholding the assessment and that these findings, being special, so control the general as to necessitate a reversal of the judgment. We do not agree. A treatment of this contention requires at least a summary statement of the special findings referred to. The trial court found that no notice of intention to adopt the resolution was given prior to convening the last meeting of the board. We have already said that no such notice was required. The finding is immaterial. The court found the resolution was adopted without evidence having been received, save that two members of the board had made a limited investigation of market values of a limited number of properties, expending not in excess of two days for one member and one day for the other in so doing; that no other director made such an investigation or did such viewing; that this investigation did not take place in the presence of taxpayers and the results thereof were not placed before the board in a public meeting or in the presence of taxpayers, save a limited number; that the adoption of the resolution took place without

opportunity to protestants to make objections to the adoption thereof; that the resolution was adopted without evidence being received in the presence of plaintiffs or other persons.

To begin with, the ''evidence'' which may be used by the board of directors sitting in equalization may come from various and informal sources and the directors may use their own knowledge as to values and kinds of property in the district. The record shows that much evidence, using the word in this broad fashion, was received. Aside from this, however, the special findings we have above summarized are immaterial findings, the truth of which does not necessarily conflict with the general findings of the court upholding the assessment. From this point of view it matters not that two members of the board made a limited investigation in the field; that they did or did not do so in the presence of protestants; that they did not disclose what they learned at public meetings in the presence of protestants; that they gave no opportunity to debate the final resolution before its adoption or that the board took no special evidence directed at the resolution as proposed and adopted. The general findings referred to are safe against the claim made that these findings invalidate them. The court found further that the board took no evidence that the actual cash value of any specific parcel of land differed from the specific valuations placed in the assessment book. While we think this broad finding is not supported by the record, nevertheless it was not jurisdictional to the action of the board that it take evidence as to the values of specific lots as compared to the values placed thereon by the assessor. The trial court found that three directors shortly before the last meeting of the board secretly agreed on the adoption of the resolution, but this finding is immaterial in view of the court's finding that the actions of the board were neither actually nor constructively fraudulent. The record shows that the resolution was regularly adopted in open meeting. It was adopted by the vote of the three whom the court found had theretofore secretly agreed to vote for it. That fact did not make the resolution void.

We think none of the other findings need special treatment. The judgment is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied January 10, 1957, and appellants' petition for a hearing by the Supreme Court was denied February 13, 1957.