[Civ. No. 13844. Third Dist. Aug. 30, 1973.]

WATER USERS ASSOCIATION OF THE EL CAMINO IRRIGATION DISTRICT et al., Petitioners, v.
BOARD OF DIRECTORS OF THE EL CAMINO IRRIGATION DISTRICT et al., Respondents;
EL CAMINO FUND CORPORATION et al., Real Parties in Interest.

## COUNSEL

Clifford R. Lewis, Bruce A. Werlhof, O'Brien, Stout & Hallisey and Suzanne Cutts Ritchie for Petitioners.

Peters, Fuller & Rush and David R. Fuller for Respondents.

Pugh & McGlynn, Thomas J. McGlynn, McCutchen, Doyle, Brown & Enersen, Burnham Enersen, and William H. Armstrong for Real Parties in Interest.

OPINION

**FRIEDMAN, Acting P. J.**—Petitioners are landowners within the El Camino Irrigation District located in Tehama County. They seek a writ of prohibition to restrain the levy and collection of assessments to pay principal and interest of the district's bonded debt and a writ of mandate to compel the district to submit a bond refinancing or settlement proposal for approval or rejection by the state Treasurer and by the district voters. Petitioners contend that their lands are being subjected to confiscatory assessments to pay bonds and interest which are barred by the statute of limitations.

The district has filed a return and several bondholders have appeared as real parties in interest.

This lawsuit forms another segment in the long, stormy history of the El Camino Irrigation District and its general obligation bonds. Earlier chapters of the history appear in *El Camino Irrigation Dist.* v. *El Camino Land Corp.,* 12 Cal.2d 378 [85 P.2d 123]; *El Camino L. Corp.* v. *Bd. of Supervisors,* 43 Cal.App.2d 351 [110 P.2d 1076]; *Pueblo Trading Co.* v. *El Camino Irr. Dist.,* 169 F.2d 312; *May* v. *Board of Directors,* 34 Cal.2d 125 [208 P.2d 661]; *May* v. *Board of Directors,* 40 Cal.2d 221 [253 P.2d 6]. The district comprises about 7,500 acres. Its formation was promoted by real estate developers in the 1920s. In 1926 the district authorized and sold $423,000 in general obligation bonds. The bonds were to mature serially over a period of 20 years commencing in 1937. They bore interest coupons evidencing interest at 6 percent per annum. Interest accruing in 1927, 1928 and 1929 was paid from bond sale proceeds. With that exception, no interest or principal has ever been paid.

Soon after the bonds were issued the real estate promotion collapsed. During years characterized by depressed land values the bond debt outran the value of the district lands. Some bondholders reduced their bonds to judgment and attempted to execute on land in the district's hands. That attempt was rebuffed by judicial decision. (*El Camino Irrigation Dist.* v. *El Camino Land Corp., supra,* 12 Cal.2d 378.) The district's board stopped levying assessments to raise bond service costs until forced to resume by a decision of the state Supreme Court in July 1949. (*May* v. *Board of Directors, supra,* 34 Cal.2d 125.) The district then levied annual assessments which were never paid. The land became delinquent and much of it was deeded to the district by operation of law. Eventually the district sold most of this land to private buyers.

The last group of bonds matured in 1956. The Irrigation District Law provides that any bond or interest coupon unpaid on presentation shall draw interest at the rate of 7 percent "until notice is given that funds are available for its payment;" that "provision [shall be] made for its payment" as in the case of registered warrants.[1] With relatively minor exceptions, the bondholders made timely presentation of their bonds and interest coupons and the bonds were then stamped or registered.

During 1972 the district and the holders of registered bonds conducted settlement negotiations. A proposed settlement would have scaled the outstanding debt from a face amount in excess of $2,000,000 down to $1,340,000. The diminution resulted from elimination of unregistered (i.e., unpresented) bonds and from voluntary reductions acceptable to the bondholders. The proposed settlement would have cost the landowners $181 per acre.[2]

According to an informal poll, a majority of the landowners supported and a minority opposed the settlement proposal. Absence of a plan for financing the share of the dissenting landowners resulted in failure of the settlement negotiations. The district directors continued to seek refinancing solutions. In December 1972, pursuant to Water Code section 25926, the district board published notice of the annual assessment for bond principal and interest, based on the face amount of the bonded debt (exclusive of unpresented or otherwise invalid bonds), amounting to $2,245,663. That action precipitated this lawsuit.

According to the district's return, it has no intention of collecting assessments to pay the face amount of the debt; rather, it continues its quest for a settlement with the bondholders, possibly through submission of a refunding bond issue to the district voters.

---

[1] Water Code section 24504: "If money is not available in the fund designated for the payment of any matured bond or interest coupon, it shall draw interest at the rate of 7 per cent per year from the date of its presentation for payment until notice is given that funds are available for its payment."

Water Code section 24505: "A bond presented but not paid shall be stamped and provision made for its payment as in the case of a warrant payable on demand for the payment of which funds are not available on its presentation."

[2] The return of a bondholder declares that, for the purpose of 1971-1972 tax levies, the Tehama County Assessor has fixed the fair market value of land within the district at $6,758,984. Petitioners have filed a replication which purports neither to admit nor deny this declaration. Because it is not controverted by the replication, this declaration is accepted as true. (*Hunt* v. *Mayor & Council of Riverside,* 31 Cal.2d 619, 623 [191 P.2d 426].) When the figure 7,500, representing the approximate acreage of the district, is applied to the aggregate fair market value, the average market value per acre, including parcels deeded to the district, is $900.

■ Petitioners have not established entitlement to prohibition or mandate. The writ of prohibition lies to restrain judicial proceedings only. (Code Civ. Proc., § 1102.) Petitioners have cited no authority imparting a judicial character to the imposition of bond service assessments and we know of none. (See *McKenna* v. *McCardle,* 97 Cal.App.2d 304 [217 P.2d 433].)

Petitioners' attack on the levy and collection of assessments might be assigned to the category of "prohibitory mandamus" which sometimes issues to restrain threatened official illegalities. (*Sail'er Inn, Inc.* v. *Kirby,* 5 Cal.3d 1, 7 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 202, pp. 3957-3959.) Viewed in that light, the action fails for two separate, independent reasons:

First, a mandamus to restrain collection of the assessment would collide with the principle of withholding judicial restraints upon tax levies when adequate remedies at law are available. (*Star-Kist Foods, Inc.* v. *Quinn,* 54 Cal.2d 507, 511 [6 Cal.Rptr. 545, 354 P.2d 1].) For the purpose of testing the validity of irrigation district bonds and assessments, an enabling provision in the Irrigation District Law (Wat. Code, § 22670) incorporates the provisions of Code of Civil Procedure section 860 et seq., which in turn establish a procedure for validating actions in the superior court by the public agency or by any interested person. (Code Civ. Proc., § § 860, 863.) That kind of lawsuit is well adapted to test the validity of an irrigation district assessment. (See *Reed* v. *Oroville-Wyandotte Irr. Dist.,* 147 Cal.App.2d 16, 22-23 [304 P.2d 731].) It represents a speedy and adequate remedy at law, precluding a mandamus aimed at the identical objective.

A second reason for rejecting the attack is the substantive inacceptability of petitioner's claim that the district's bonded debt is barred by limitations. As we have observed, the Irrigation District Law provides that a mature bond or interest coupon for which funds are not available shall draw interest at 7 percent from the date of presentation until notice is given that funds are available for its payment. If only by reason of its comparability to a registered warrant, a matured irrigation district bond bearing an endorsement showing presentation is called a "registered" bond. (See Wat. Code, § § 24504-24505, fn. 1, *supra; Moody* v. *Provident Irr. Dist.,* 12 Cal.2d 389, 392-393 [85 P.2d 128].)

■ Petitioners argue that by force of section 24505 (fn. 1, *supra*) registered bonds and their interest coupons are vulnerable to the four-year statute of limitations established by Water Code section 24661 for registered warrants. The latter statute declares: "No action or proceeding shall be maintained to enforce the payment of any registered warrant or to

require the levy of an assessment therefor unless the action or proceeding is commenced within four years from the date of the original presentation of the warrant to the treasurer for payment."

The contention rests upon a misinterpretation of section 24661. The general four-year statute of limitations (Code Civ. Proc., § 337, subd. 1) requires an unpaid bondholder either to bring suit or to present his bond for payment within four years of its maturity. (*Irvine* v. *Bossen,* 25 Cal.2d 652, 662 [155 P.2d 9].) Presentation and registration amount to a new agreement, which raises the interest rate from 6 percent to 7 percent and tolls the statute of limitations until the district treasurer notifies the bondholder that funds are available for payment. (*Moody* v. *Provident Irr. Dist., supra,* 12 Cal.2d at pp. 395-396; see also, *Carpenter* v. *Glenn-Colusa Irr. Dist.,* 14 Cal.2d 338, 340 [94 P.2d 345].)

Given the interpretation urged by petitioners, Water Code section 24661 would inject an additional period of limitations into the statutory scheme for enforcement of irrigation district bonds. For at least three reasons that interpretation collides with the legislative objective underlying section 24661. According to the general statutory scheme, as discerned in *Moody* v. *Provident Irr. Dist., supra,* presentation and registration supply a period of repose to the holder of a matured, registered bond. He may sit back until the district treasurer tells him that funds are available. Petitioners' interpretation of section 24661 would strip the bondholder of his statutory repose, forcing him to harry the district and its landowners with suits to compel recurring assessments.

Secondly, the language of section 24505 (fn. 1, *supra*) militates against petitioners' interpretation of section 24661. The former statute does not incorporate by reference the entire body of statutes governing irrigation district registered warrants. It declares only that "provision [shall be] made for [the bond's] payment" as in the case of a registered warrant. Section 24661 affects the obligee's remedy for the payment of the affected obligation, not the obligation itself. (See *Aikins* v. *Kingsbury,* 247 U.S. 484, 487-488 [62 L.Ed. 1226, 1228-1229, 38 S.Ct. 558].) Not being a "provision . . . for . . . payment," it is literally outside the embrace of section 24505.

Third, statutory history rejects petitioners' appraisal of statutory objective. The codified provisions governing registered warrants were originally enacted in 1915 as section 61a of the former Irrigation District Law. (Stats. 1915, ch. 696.) The 1915 law did not contain the statute of limitations now codified as section 24661. The 1919 Legislature adopted section 52 of the Irrigation District Law, which is the ancestor of the codified provisions calling for presentation and registration of unpaid bonds. (Stats.

1919, ch. 339.) In that state of the law (that is, without any special four-year statute of limitations on actions to collect registered warrants) the bonds of the El Camino Irrigation District and many other California irrigation districts were issued.

Not until the depression year of 1933 did the Legislature enact the four-year statute of limitations now expressed in Water Code section 24661. (Stats. 1933, ch. 514.) At that time, we know judicially, the state and many California political entities were operating in the red and had insufficient cash to pay current operating expenses. (See, e.g., *Riley* v. *Johnson*, 6 Cal.2d 529 [58 P.2d 631]; *Riley* v. *Johnson*, 219 Cal. 513 [27 P.2d 760, 92 A.L.R. 1292]; *Voorhees* v. *Morse*, 1 Cal.2d 179 [34 P.2d 153].) The economic depression of the 1930s caused distress among public districts and their landowners, burdened by general obligation and special assessment bonds which outran their ability to pay. Both the federal Congress and state legislatures attempted to channel bondholders of insolvent public districts into orderly, collective compositions and refunding arrangements.[3] As interpreted by petitioners, the 1933 ancestor of Water Code section 24661 would have had an opposite effect, stimulating the anarchy of individual lawsuits by holders of defaulted bonds and augmenting the distress of district landowners. In establishing a new four-year statute of limitations, the 1933 Legislature intended to prevent the revival of stale registered warrants issued to finance current operations, not to impose a fresh period of limitations on the holders of defaulted bonds.

Correctly construed, section 24661 does not affect registered irrigation district bonds and their interest coupons. The pleadings adequately demonstrate that the El Camino Irrigation District is not levying assessments for the payment of principal and interest of unregistered bonds or bonds otherwise barred by limitations.

Petitioners seek a mandamus directing the district to submit the proposed compromise with the bondholders for approval of the state Treasurer and district voters. (See Wat. Code, § § 24662, 24760-24771.) The district's return demonstrates that no settlement has been reached; that at most there are hopes, negotiations and investigations looking to a future settlement. In the absence of a concrete agreement, the district has no present duty to seek approval of the state Treasurer or district voters; absent

---

[3]In 1934 Congress initiated a series of enactments which evolved into chapter IX of the Bankruptcy Act, authorizing debt refinancing by public agencies. History of the federal legislation is outlined in 9 Am.Jur.2d, Bankruptcy, section 1411. Examples of depression-born California legislation to facilitate debt rearrangements by irrigation districts are Statutes 1931, chapter 1073; Statutes 1939, chapters 13, 72, 419; see *West Coast Life Ins. Co.* v. *Merced Irr. Dist.*, 114 F.2d 654.

a clear and present duty, a writ of mandate will not lie. (*People* ex rel. *Younger* v. *County of El Dorado,* 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193].)

Finally, petitioners base a claim to relief on the charge that the annual assessment is "confiscatory." (Cf. *May* v. *Board of Directors, supra,* 34 Cal.2d at p. 134.) Whatever may be the meaning of the sobriquet and whatever its constitutional significance, it is premised upon the assumption that the entire bonded debt is outlawed by limitations. The assumption is unsupported in law.

The petition is denied and the alternative writ is discharged. Petitioners will bear costs.

Regan, J., and Janes, J., concurred.

A petition for a rehearing was denied September 18, 1973, and petitioner's application for a hearing by the Supreme Court was denied October 24, 1973.